Next case for argument is 151960, Enrique Jobdiba. Next case is 151960, Enrique Jobdiba. Next case is 151960, Enrique Jobdiba. Mr. Schloss, we're ready when you are. Good morning. May it please the court. The board's fundamental error in this case is that it discounted the possibility that personnel placement and recruitment services are rendered directly through software and that the evidence in the record demonstrates that. I don't understand. You used some words. It discounted the possibility. I'm confused by a lot of terms that are being thrown around in this case, but that's another one. Is a possibility enough? I mean, when we're talking about whether or not it's a service or not, is that the standard, where there's the possibility of... No, Your Honor, the standard is not possibility. They discounted the evidence, Your Honor, essentially. One particularly telling comment at the end of the board's decision on reconsideration is the precise language was that the evidence in the board's view did not show what they called independent activity distinct from providing its software to others. Suppose that your client, which I guess your client does, sells software to another company which uses the software for recruitment purposes. Do you contend that that would satisfy what's described here in the registration? That is, personnel placement and recruitment services. The mere act of selling software, Your Honor? Yes. The mere act of selling software would not. Could you describe a little bit more how your software as a service works in the context of... Is it the same as just selling someone a box of software? It is not, Your Honor. Or how does it work? It is not, Your Honor. There are multiple ways that the software can be configured, and there are services, components, and options that can be selected in a myriad of different ways depending on the client's preferences. Some of the more typical functionality performed by the software is it goes out on the Internet. Okay, stop for a minute. How is it, if at all, interacting with a person? Is it stored on a website? How does that interaction work? I find that the record isn't necessarily clear on that. There's some evidence about how it's software as a service, and I think I know what that means. But could you really elaborate on that aspect and how it's perceived by a customer who's using the software, which is, I think, not on their PC but rather hosted elsewhere? Typically hosted by my client, yes, Your Honor. Hosted by a client. What you mean is that your client operates a website which provides software that can be utilized by employers and by potential employees to match one with the other. Not exclusively by a website. My client operates many websites, but it also can host on separate dedicated servers for a client a particular iteration of the software or whatever. Well, I guess it's that second situation that I'm unclear about. I can understand your argument that if you're hosting a website that potential employers and employees can access and it provides matching based on the software. I can understand the argument that's personnel placement and recruitment services. I'm having difficulty in seeing how supplying the software that's used by an employer constitutes that. I'm not sure I understand the last part of Your Honor's question, but I'll try to address it as best I can. And I'll try to address Judge Stoll's question as well. I think they're similar questions. Okay. So the software interacts with people by forwarding resumes to them in response to particular queries by suggesting appropriate employment openings to candidates who may apply through the software. Who's running the software? The software. What do you mean by running it, Your Honor? Well, I mean, if you supply the software to an employer who utilizes the software for recruitment purposes, I'm not sure that that constitutes your client's performing recruitment services. Yes, but Your Honor, the software is provided as a service, which means not only is it physically hosted by my client, but depending on... What does hosted mean? It means it resides on a server that's not within the control directly of the customer necessarily. So who is it that has the server? Who has the server that the software is hosted on? It could be, in some instances, my client, and in some instances, my client's customer. It depends on the client's preferences. Can we just roll back? I mean, I understand that you're getting a lot of questions. I think we started off by just wanting for you to describe to us how this works. Yes, Your Honor. So if one of my client's customers has a job opening, for example, for a software developer, and they are looking for software developers who have five years of experience with particular programming languages, they have particular certifications, and those are the only kinds of candidates they want to see. They will put an inquiry into JobDiva's software. JobDiva's software will go out to the Internet, doesn't have a static database of these things, goes out, finds appropriate candidates, suggests them to the client. Depending on the customer's configuration, would allow candidates to apply directly through the software. And they maintain control? JobDiva maintains control of that software? Or are you talking about instances where companies purchase the software and then they go ahead and perform the services you've just described? By maintain control, you mean it resides on their server or something else, Your Honor? I don't know. I think Judge Stoll started with the question of, is this something that some other company is independently purchasing your software and then using to provide the services you've just described? Or do you maintain control and are you really operating the software? Yeah, JobDiva is absolutely operating the software, Your Honor. What does that mean, operating the software? It means it resides on your server? Yes, Your Honor. Are you saying to the public, come to us and we'll do this recruitment service for you? Or are you just saying to a company, use our software for your purposes of recruitment? JobDiva says to HR departments of companies, to standalone recruiting companies, we can help you recruit and identify appropriate candidates and place those candidates in jobs. By supplying software to you? Among other things. Well. Well, not merely by supplying software, Your Honor. I can understand. I understand the argument that if you're hosting a website, inviting employers and employees to come to the website and be matched, that there's a good argument that that's the provision of recruitment services. I'm having difficulty in seeing how that's the case where you're supplying the software to the employer and the employer is running the software and doing the matching. The employer states its preferences, Your Honor, but it doesn't do the matching. The matching is done by JobDiva, and that's why it's a service. Well, it's done by your software. Well, it's not done by a human being, Your Honor, but it's nevertheless performing the identical functions that human recruiters have always performed. Is the important thing that we should be thinking about here the perception of consumers when they're using the software and whether they're interacting with JobDiva or the software on a different server, is that the important thing we should be focusing on? I mean, it seems to me I thought that a lot of the cases, even the TTAB cases that the TTAB cited, were talking about consumer perception and whether the consumer is perceiving something as being a service or not, that that's one of the critical factors we should be looking at. Is that right? I would agree with that point, Your Honor, and I would also say that the TTAB cases are largely ex parte specimen use specimen cases. We have more of a record here. The thing that I'm – I just want to try to explain to you what I'm having trouble with is that if it's just software that's residing on my own server, residing on my PC, I don't see that as me interacting with you. You give me the software and then I'm done. On the other hand, maybe there's something to the fact if it's elsewhere and I've got to log on to the internet to gain access to that software and it's interactive. Can you just explain how that works? Yes, Your Honor. Absolutely. So, Your Honor, it's not as though it's a finished package that's handed off by JobDiva to one of its customers. It's a service because, as you said correctly, Your Honor, the customer of JobDiva logs into the service, puts in requests, and starts requesting personnel placement and recruitment services. The person doing the requesting is the employer. It could be an employer directly or it could be a recruiting firm who's strapped for resources. Okay, so the record doesn't reflect your clients hosting a website which people come to to be matched. It's not merely a website, Your Honor. It's multifaceted. What does that mean? Does the record show that there's a website run by you, advertised by you, to employers and employees to come and be matched or not? I believe it does, Your Honor. Where does it show that? In at least 25 or 30 different screenshots explaining the capabilities of the software. Well, it's not explaining the capabilities of the software. It's, you know, are you advertising to the public that's providing these recruitment services by hosting a website where this matching can take place? Can you give some sites also? Certainly, Your Honor. I would point to A117. JobDiva is the largest ultimate full-service solution for the staffing industry with an extensive suite of products and tools front to back and covering all staffing needs. It may not be completely explicit, but covering staffing needs means matching employers and employees. That's what staffing is. That's what personnel placement and recruiting is. I would also point to A175. What about on A117 where you say it's a web-based software-as-a-service model? What does that add? What does that add? I think that tells prospective purchasers that they don't need to install the software. It's hosted and provided as a service. And I also believe it indicates that the service of personnel placement and recruitment is provided by the software. Just quickly, because I'd like to reserve some time for rebuttal, I would also point to A174 and 175 describing the candidate portal, A176 and 177, which describes the candidate information management. All these things interact directly with people, as Your Honor was asking earlier. I would also point to A392, find ideal jobs, forward resumes, measure candidates' qualifications against a job. These are just a few. There are more references to the candidate portal on A396. I'm not sure whether the Board had some preconceived notion that software and recruitment services are separate and distinct from one another in all instances, but we believe they're not. Can I ask you one more question? I know you want to sit down, but Jobs Dashboard, it's on page A402. It talks about how JobDiva comes equipped with a similar instrument panel that gives you quick access to key data. Where is that hosted? What is that Jobs Dashboard? Is that something that I need to access through the Internet? I believe the dashboard is accessed through the Internet via login. So you couldn't get it on a public website without login, which is true of most of this. And that Jobs Dashboard, is that the same thing at page A414? It talks about cruising, records, sourcing, and digital activity. See the candidates who responded to email merges and such. Is that on your Jobs Dashboard? I think the dashboard might be a subset of that. I think A414 may be a broader reference to handling job requisitions through, as it says, a simple data interface. So that could include the Jobs Dashboard. Do you have any screenshots at all on the record of exactly what your customers are seeing as they're interacting with the JobDiva software? I believe they would see – I can't put my finger on it right now. But we certainly have screenshots of the website, which I can point you to. I just need a moment, perhaps, if I can have a few seconds for rebuttal. Thank you. Thank you. We'll restore two minutes for rebuttal. Thank you. Ms. Walker? May it please the Court. I just wanted to start out addressing one issue that came up from my friend. We are not talking here about just whether we have a service or a good, because software can be offered as a service, as we noted in our brief. And one of the things that – So suppose that they ran a public website in which they said, you know, we provide recruitment services. You can log on as an employer. You can log on as an employee, and our software will match the two of you. Would that constitute personnel placement and recruitment services? I don't believe so under the analysis in this case. And the reason is is because if software is being offered in non-downloadable format, if in your hypothetical what the company is offering is a software solution offered via the Internet in non-downloadable format, and that is all that they're offering, that is the – I mean, for lack of a better word, the product, the thing that they are selling is a software solution, then that is properly categorized as a software as a service if it's in non-downloadable format. See, that's the distinction that I find troubling. I mean, I really don't see the difference between human beings doing the matching and that being offered as a service, and they're running the software on their own website and matching the people. I just don't – the software as a service distinction doesn't really make much sense to me. That's the problem I'm having. Yeah, and I think here that one of the critical things to look at is what the board did, which is that it looked at whether JobDiva was placing people and whether JobDiva was recruiting people. And what JobDiva is doing is offering a software and database solution that allows HR professionals to do that matching. That's a different question, and I understand that that may be distinguishable and may not be within the category of recruitment services. But the hypothetical I gave you was that JobDiva is running its own website. It's publicly advertising. We provide recruitment services through our website. You can log on as an employer, an employee, and we'll match you together. And to the extent that the board is saying that that doesn't constitute providing recruitment services because it's not people doing it, it's software doing it, I have a problem with that. Yeah, although the board never made the people distinction. Well, do you agree with Judge Dyke that that would be permissible or not? Huh? Well, I – If Judge Dyke has described, do you think that would constitute a service? It does constitute a service. Okay, so how is what JobDiva does different? No, wait, I don't think they're agreeing that that constitutes recruitment services. That's fine. It constitutes – But you say they have a service. I mean, in their registration that the TTAB said they could have for the stylized mark, they say computer services, namely providing databases featuring recruitment and employment, employment and advertising, career information and resources, resume creation, resume transmittals, and communication of responses there too. That's okay. That's a service that the TTAB said was okay as a descriptor. That's right, Your Honor. So that is a – So what if they would have said computer services for personnel placement and recruitment services? Is that the distinction? Well, it is the distinction, although that would be a different service. The other service that we offered here, we offered in our brief as an example, is the software as a service, which would actually be categorized in a different class. So these are Class 35 services. All the services that we're talking about in this case are Class 35 services. But there's an additional – we offered an additional possibility. So it may be that they're doing more than one thing. The database services, the services that they identify in their registration, are sort of in the nature of these databases. But they also offer – appear to offer software as a service. I'm curious by your answer, though. Yeah. What I was asking you is if they would have just inserted computer services before personnel and placement and recruitment services, would that have made their registration okay? It would not have – that phrase in that class would not have identified the software as a service, services that they're offering, because computer services in that class would identify just the manner in which the services were performed. And so you are still talking about the personnel placement, the act of placing someone and the act of recruiting someone. So if I understand, if they're running their own website, they're offering the service publicly, if they're just using software instead of people, that has to be software as a service as opposed to recruitment services. Is that correct? That's correct. And part of that is because it turns on what the consumer – I don't understand that. Really. I don't understand. I don't understand why having the software do it instead of people do it takes it out of recruitment services. Well, it's because here what the board looked at was the definition. So it's not – I want to be clear that it's not to say that every time you employ software that it changes something to software as a service. It is in this case what the board found was that the act of recruitment involved recruiting people and placing people. They are not placing people. The best analogy that I can come up with is a comparison to Westlaw versus legal services. So Westlaw is a database service. You input information and you get results back from it. That is akin to their database services that they identify in their application. But it is not the same as calling a lawyer and saying, please give me the answer to this question. It's true that the lawyer may employ Westlaw to get to that answer, but it is not the same service. And so here what we're talking about is the accurate identification, and the board made a factual determination that what JobDiva offers is not personnel placement and recruitment services, and that is the type of finding. I don't see that in their decision. I mean, I hear what you're saying, but over and over again they keep on saying that they're not rendering personnel placement and recruitment as an independent activity distinct from providing software. I don't see where they've said that if a person was doing what they're doing, it's not personnel placement and recruitment. Over and over again they seem to distinguish it on the ground that it's just software. Well, what they said at 814 is that personnel placement and recruitment and petitioner's description of services means that petitioner is finding and placing people. So they are placing people in jobs at other companies or providing personnel staffing services for others. And there is nothing in the record that identifies that JobDiva is engaged in the placement or providing personnel staffing services for others, and that's the distinction that the board drew. Again, I think that one of the critical— Is that because they are not using people and using software, or is it because they're providing the software to employers who do the running of the software? It's the latter, Your Honor. They are providing the tool for the HR staffing companies to use where the staffing companies input the information that they want and they get a result. It's a database service. And it's a service that functions on the Internet, and so it's interactive. Part of the distinction here is that when you have software and you have downloadable software or software on CD-ROM, it's static. And so there is an interactive component to this, and that is why it is classified as a service and they are offering a service. It's just not the personnel placement and recruitment services that are identified in the registrations. And one of the critical issues here is that it's very important to identify accurately the services that are offered. And what consumers are going to perceive from what JobDiva offers is that they offer a software solution. On A114 that my friend pointed the court to earlier, that example describes a full service solution, a solution, and then they go on to say software as a service. That is what consumers are purchasing. They are not purchasing a personnel placement. Who are the consumers? Are they employers in recruitment services? I understand that it's offered to both, that it's both the outside staff agency. Yeah, but it's not offered to potential employees. That's my understanding. That's correct. And I just wanted to really point to a point that Judge Stoll made earlier, which is that the perception of consumers is a critical factor here, and this court noted that in the Lens.com case in the converse situation. So in that case, the question was whether a goods provider was also offering services, was offering software services. And what the court said there is that when you sell a good and you utilize software, that software is not a separate product unless consumers perceive it to be a separate product. If it's just utilized in facilitating the sale of your products, you do not offer that separately. I thought that it was the reverse. I thought that Lens.com involved the sale. They were trying to say that Lens.com was trying to argue that they sold a good, not just a service. So they sold – oh, I'm sorry. So they offered the sale of contact lenses, right? Well, and they said their software is a good for what they should be offering. That's right. I'm sorry. I was thinking of the contact lenses as the product, but that's correct. So it's not the situation we have here. It's the converse situation. I agree with you. It supports the idea that there's a fact-specific analysis, no bright-line rules. That's right. A fact-specific analysis, there's no bright-line rules, and the perception of the customer and what the customer understands it's purchasing is critical in the inquiry. And here, there's no question in the record that what JobDiva is offering is a software-as-a-service solution, unless the court has any further questions. Thank you. So just to begin by addressing Judge Stoll's question, there is, at A-94, a screenshot of what I believe a job requisition looked like in JobDiva at a certain point in time. I can't represent with complete confidence that it looks like that now. It probably looks different. I would say it's harder to read when it's on page 8. Yeah, but it's not the best copy. But if you look at the bottom, it talks about the skills, required experience, description, title, start date. These are all sort of headers that would be completed by a customer. You see this particular requisition would be for an intellectual property lawyer. So there's that. And then just to respond briefly to some of the points raised by my colleague, I think the Westlaw analogy is not an apt analogy because it's not a database service. What JobDiva does is it goes out. It's not just interactive. It's 24-7 going to third-party sites to collect job candidate and job opening information and to present that to its clients. And in response to a question that Judge Dyke asked, potential employees are candidates, and they, in some circumstances, depending on what JobDiva's customer wants to set up, can apply directly through a JobDiva portal set up on a JobDiva customer's site. So I must say thank you. Thank you.